978 So.2d 606 (2008)
SUCCESSION OF Carl L. DAVIS, Jr.
No. 43,096-CA.
Court of Appeal of Louisiana, Second Circuit.
March 19, 2008.
Pringle & Herzog by John R. Herzog, Shreveport, for Appellant.
Theus, Grisham, Davis & Leigh by Paul D. Spillers, Robert L. Curry III, Monroe, for Appellee.
Before GASKINS, CARAWAY and MOORE, JJ.
CARAWAY, J.
In this ancillary succession proceeding, an independent executor appeals a judgment sending a particular legatee into possession of her undivided one-half interest in certain Louisiana mineral rights. At the time of the judgment, approximately 14 months after the date of death, the executor had not filed the federal estate tax return, although an estimate for that tax of over $1,000,000 had been preliminarily paid. The independent executor appeals the partial judgment of possession, and the legatee has raised an issue regarding the subject matter jurisdiction of this court to hear the appeal. Finding the action of the trial court premature, we reverse the judgment and remand for the issuance of further orders for a complete accounting by the executor.

Facts
Carl L. Davis, Jr., a resident of Houston, TX, died testate on April 21, 2006, without surviving wife or children. Davis executed a last will and testament in Texas *607 on September 12, 2001, and named his friend, Vincent Otho Cano, independent executor of his estate. Davis's will also bequeathed to his sole surviving sibling, Alice David Hinton, one-half of the mineral interests (hereinafter the "Louisiana Minerals") he owned on 65,000 acres of land in North Louisiana that he had received "as a dividend from Davis Bros. Lumber Company, Ltd. prior to its liquidation in 1971. . . ." Cano received the remaining one-half interest. Hinton and Cano also received one-half interests in other mineral rights owned by Davis which were not located in Louisiana. Davis left the residue of his estate which included a home and cash accounts to Cano.[1]
An order admitting Davis's will to probate and authorizing letters testamentary to Cano was signed by a Texas court on June 20, 2006. Subsequently, on January 10, 2007, Hinton filed ancillary probate proceedings in the Third Judicial District Court of Louisiana in accordance with C.C.P. arts. 3401, et seq., and La. R.S. 9:2421, et seq. An order of probate was signed by the Louisiana court on January 11, 2007.
Cano also filed a petition to probate Davis's will, to be named independent executor and for letters of administration in the Third Judicial District Court on January 27, 2007. The court appointed Cano as independent executor and ordered the issuance of letters of administration on March 14, 2007. The letters testamentary were not issued until August 7, 2007, approximately one month after the order of appeal was signed in this matter. As a result, Hinton now challenges the jurisdiction for this appeal.
On May 11, Hinton filed a Petition for Partial Possession seeking to be recognized as owner of her legacy. The trial court set the hearing for June 4, 2007. Both parties submitted pre-hearing memoranda. Cano argued that the petition for partial possession was premature as the federal estate tax return had not been filed. Hinton argued that her legacy was not exposed to tax liability because her brother's will directed that the estate taxes be paid from the residuary estate. She further contended that because no Louisiana inheritance taxes were due, she was entitled to a judgment of possession. She also sought an accounting for $1.3 million in income from her Louisiana Minerals which had allegedly accrued since Davis's death.
At the hearing, only Cano testified. He stated that the filing of a federal estate tax return was necessary for the estate. He had applied for and was granted an extension for filing the tax return until January 21, 2008. Nevertheless, the Department of Treasury required estimated taxes paid. Two checks were sent for payment of the estimated taxes that totaled in excess of $1,000,000. Copies of the forms for the extension were placed into evidence. Attachments to the form prepared by Cano's accountant explained that the decedent's mineral interests "comprise approximately 85% of the value of the decedent's estate. . . ." The explanation also declared that the "executor is in the process of assessing the availability of other estate assets to pay the estate tax since the mineral interests are not available to be utilized at this time." Cano testified that the final federal estate tax return was to be filed by July 15. He also stated that he *608 would then know if he had to obtain funds beyond the residual estate for payment of taxes. Cano conceded that his original valuation of the estate at $629,000 was incorrect because he had later learned of more income belonging to the estate. Finally, Cano made no claim of any creditor's debt affecting the administration of the succession.
After considering Cano's testimony and the argument of counsel, the trial court rendered judgment in favor of Hinton, placing her into possession of her legacy. The court specifically determined that no Louisiana inheritance taxes were due and that the will required that the taxes be paid from the residual estate. The judgment further ordered that Cano file within 45 days an accounting of all mineral royalties attributable to Hinton's legacy of the Louisiana Minerals accruing since the date of death.
This appeal by Cano challenges the trial court's authority for the partial judgment of possession.

Louisiana Succession Law
For an ancillary succession proceeding involving a nonresident decedent's property in this state, the procedure for administration of the succession shall be the same as provided for the succession of a Louisiana domiciliary. La. C.C.P. art. 3401.
The parties do not dispute that Davis's will appoints Cano as an independent executor so that Louisiana's independent administration of estates law, La. C.C.P. arts. 3396, et seq., has application. Upon qualification of a succession representative and compliance with the provisions of the chapter for independent administration of estates, the court shall issue Letters of Independent Executorship, certifying that the independent executor has been duly qualified. La. C.C.P. art. 3396.1. Except as expressly provided otherwise in the independent administration of estates law, an independent administrator shall have all the rights, powers, authorities, privileges, and duties of a succession representative provided in Chapters 4 through 12 of the Code of Civil Procedure title for the administration of successions, but without the necessity of delay for objection, or application to, or any action in or by, the court. La. C.C.P. art. 3396.15. Except where the testament provides otherwise, an independent executor shall not be required to provide security for the administration of the estate. If an interested person, such as an heir, legatee, or creditor of the estate requests security, then upon application by such party, and after a contradictory hearing, the court may order the independent executor to furnish security as the court determines to be adequate. La. C.C.P. art. 3396.14. An independent executor is not required to file an interim accounting. Nevertheless, any person interested in the estate may demand an annual accounting from the independent executor as provided in Article 3331 of the Code of Civil Procedure. Further, the court on application of any interested person may require an independent executor to furnish accountings at more frequent intervals. La. C.C.P. art. 3396.17. The court on motion of any interested person, after a contradictory hearing, may remove an independent executor for any of the reasons provided in Book VI of the Code of Civil Procedure for which a succession representative may be removed from office. In addition, the court on motion of any interested person, after a contradictory hearing, may for good cause order that the letters of independent administration be withdrawn and that the succession thereafter be administered under the procedures set forth elsewhere in Book VI of the Code. La. C.C.P. art. 3396.20.
Regarding the partial judgment of possession which is the subject of this appeal, *609 Cano cites La. C.C.P. art. 3396.18, which provides as follows:
A. Before the succession can be closed and the independent administrator discharged, there must be filed an inventory or sworn descriptive list of assets and liabilities of the estate verified by the independent administrator.
B. A successor shall not be placed in possession of property without the filing of an inventory or sworn descriptive list of assets and liabilities and proof that the inheritance tax, if any, shown as due on the return has been paid. The successor may be placed in possession by a final or partial judgment of possession.
In support of her Petition for Partial Possession, Hinton cites Code of Civil Procedure Articles 3061 and 3381, which provide as follows:
Art. 3061. Judgment rendered and signed immediately
The court shall render and sign immediately a judgment of possession, if it finds from an examination of the petition for possession, and from the record of the proceeding, that the petitioners are entitled to the relief prayed for, and that all inheritance taxes due have been paid or deposited into the registry of the court, or that no such taxes are due and that an inheritance tax return, when required, with the required accompanying documents, has been filed with the collector of revenue. The judgment shall recognize the petitioners as the heirs, legatees, surviving spouse in community, or usufructuary, as the case may be, of the deceased, send the heirs or legatees into possession of the property owned by the deceased at the time of his death, and recognize the surviving spouse in community as entitled to the possession of an undivided one-half of the community property, and of the other undivided one-half to the extent that he has the usufruct thereof. . . .
Art. 3381. Judgment of possession
A judgment of possession shall be rendered and signed as provided in Article 3061. The judgment shall be rendered and signed only after a hearing contradictory with the succession representative, unless he joins in the petition, in which event the judgment shall be rendered and signed immediately.
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. La. C.C.P. art. 3191. Also, Article 3197 states that "[i]t shall be the duty of a succession representative to close the succession as soon as advisable."
While not clearly addressed in the Code of Civil Procedure articles for the administration of successions, the filing of the federal estate tax return and the payment of such tax are functions of the administration of the estate as shown by the estate tax apportionment law, La. R.S. 9:2431, et seq. In that law, the definition of "tax" includes the federal estate tax. La. R.S. 9:2431(7). The law provides for apportionment of the tax among those persons receiving legacies in accordance with the directives in the decedent's will or otherwise "in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate." La. R.S. 9:2432. In stating the rules of apportionment of the tax, including the federal estate tax, La. R.S. 9:2432 references apportionment "by the court" which implies the judicial procedures attendant to the administration of successions and the recognition of heirs and legatees by a judgment of possession. Finally, the fiduciary or other person in possession of the property of the deceased required to *610 pay the tax may withhold from any property distributable to any person interested in the estate, upon its distribution to him, the amount of tax attributable to his interest. La. R.S. 9:2434(A).

Discussion

I.
In brief, Hinton argues that on the date of appeal, Cano lacked authority to act as succession representative because his letters testamentary had not been issued by the court. On those grounds, Hinton raises a claim that this court lacks subject matter jurisdiction to hear the appeal.[2] We find no merit to this claim.
At the time of Hinton's request for this contradictory hearing, she named Cano and prayed that the court order him "to notify Petitioner of any effort to have the Court issue Letters Testamentary to him and that Petitioner be granted ten (10) days to request that bond be posted by VINCENT OTHO CANO prior to Letters Testamentary being issued to him." This prayer regarding security is contrary to the decedent's will and La. C.C.P. art. 3396.14 and was not supported by specific allegations justifying the prayer. The initial order of the trial court appointing Cano as independent executor in March 2007, required no security, and the subject judgment which also orders Cano as executor to account to Hinton for the accrued mineral royalties from her legacy does not require security for the further administration of the estate. Therefore, at the time of the contradictory hearing against the executor, there was no justification shown in the record for the non-issuance of the letters testamentary which failure remained contrary to the March 14, 2007 order.
Moreover, Cano's defense asserted on behalf of the estate, and the subject judgment rendered against him in his representative capacity in June 2007, were proceedings under the supervision of the trial court and not independent acts of an executor without the proper authority. Before the delays for appeal of the judgment had run, Cano was issued letters testamentary making Hinton's claims regarding authority for Cano's prosecution of this appeal moot.

II.
Hinton's petition for partial possession and delivery of her Louisiana legacy has appeal from the broad perspective because of the delay of action by Cano since Davis's death, the lack of accounting by Cano and, most importantly, the large sum of income being generated by the Louisiana Minerals.[3] Citing Code of Civil Procedure Articles 3061 and 3381, Hinton asserts that the judgment of possession was proper after the contradictory hearing despite Cano's refusal to "join in the petition" and his opposition to the delivery of Hinton's legacy. We disagree.
Admittedly, Cano's testimony at trial was less than forthcoming about the details of his dealings with estate matters for the Louisiana and other properties and his handling of the federal estate tax return. Certainly, with the federal estate tax return *611 nearing completion, Cano's production of the details of his accountant's or petroleum engineer's efforts for appraisal of the large mineral holdings of the estate and documentation of those efforts may have avoided the judgment rendered by the trial court. Despite obligations as a fiduciary over a succession of concern to only himself and Hinton, Cano neglected basic communication with Hinton, who for protection of her interests brought him before the trial court. While Louisiana's new independent administration of estates law allows actions by the independent executor without application to the court for approval, the obligation of the fiduciary still requires good faith dealings and managerial disclosure with the heirs and legatees for whom he represents. La. C.C.P. arts. 3191, 3396.15 and 3396.17. While disclosure by a more formal annual accounting may be demanded from any person interested in the estate, a general good faith disclosure obligation is also present so as to avoid this type of dispute and fulfill the fiduciary's duty.
Nevertheless, the trial court had at its disposal other remedies to insure that this independent executor was properly fulfilling his duties before the court's issuance of the judgment of possession. Certainly, an accounting addressed under Article 3396.17 could have been ordered immediately.[4] The trial court can order an accounting on its own motion. La. C.C.P. art. 3331. The accounting should have sought the computation and detailed explanation of the federal estate tax which Cano ambiguously suggested in his testimony and arguments might be required to be satisfied out of a portion of the value of Hinton's legacy. With Davis's will directing allocation of the federal estate tax to the residual estate, any possibility of an apportionment of the federal tax to Hinton's legacy should have been explained to the trial court and this court. Circumstantially, we understand from the record and estate tax law that the mineral assets in Louisiana producing in excess of $2.6 million in the year after Davis's death required appraisals for the filing of the federal estate tax return. See, 26 U.S.C.A. § 2001; Estate of Johnston by Payne v. United States, 779 F.2d 1123 (5th Cir. 1986), cert. denied, Payne v. United States, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986). Nevertheless, Cano did not provide the trial court with an adequate explanation of the steps being taken for the federal estate tax return and the proposed allocation of that tax as such allocation might affect Hinton's legacy.
As set forth above, the filing of the federal estate tax return and the payment of such tax are functions of the administration of a Louisiana succession. Even with the weak explanation of the independent executor's actions for the federal estate tax return, the record indicates that the trial court's judgment was premature until proof in the form of an accounting for the federal estate tax was provided.
Additionally, Code of Civil Procedure Article 3396.18 requires a detailed descriptive list of assets and liabilities of the estate before the succession can be closed. Such list is an accounting that was also not before the court.
Despite the fact that this is an ancillary succession proceeding and that the Louisiana Minerals legacy apparently may not be subject to an apportionment of the federal estate tax, the determination of the federal *612 estate tax on the return should have been brought before the court under the facts of this case before the issuance of the judgment of possession. Accordingly, we will reverse the judgment and remand the matter to the trial court for further orders for the required accountings of the independent executor before the delivery of Hinton's legacy.

Conclusion
The partial judgment of possession is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to the Succession of Davis.
REVERSED AND REMANDED.
NOTES
[1] The original inventory filed by Cano in the Texas proceedings listed the total value of Davis's estate at $629,209.22, including real property of $175,000 and cash in the amount of $454,172.84. That inventory included neither the Louisiana Minerals, nor the other mineral interests identified in his will.
[2] Under La. C.C.P. art. 2163, an appellate court may consider a peremptory exception of lack of subject matter jurisdiction filed for the first time in the appellate court if the exception is pleaded prior to a submission of the case for a decision and if proof of the ground of the exception appears of record.
[3] Although Hinton asserts in pleadings and brief that the Louisiana Minerals had generated over $1,300,000 in revenue in the year following Davis's death, she never testified to that information at trial. Nevertheless, from Cano's argument, the information regarding the royalty income from the Louisiana Minerals appears not in dispute.
[4] Article 3396.17 addresses an "annual accounting." Cano had been acting as executor since June 2006 and the June 6, 2007 Louisiana hearing was over one year after Davis's death. Regardless of the timing for the first "annual accounting," this dispute required Cano to account with more expertise and detail than that presented by his testimony.