DREW, J.
 

 hThe heirs have been litigating this succession for over 27' years.
 
 [1]
 
 The present administratrix, Angelina llardo (“llardo”), appeals a partial judgment placing 10 of the heirs in possession of their
 
 pro rata
 
 portions of the remaining asset of the estate of Anthony Scurria (“Anthony”), who died December 16,1983. The sole asset of Anthony’s succession is an unpaid judgment for $416,666.67
 
 [2]
 
 plus interest from the date of judicial demand. This court awarded that judgment in
 
 Scurria v. Hodge,
 
 31,207 (La.App.2d Cir.10/30/98), 720 So.2d 460, 469,
 
 writ denied,
 
 1999-0011 (La.3/19/99), 739 So.2d 782.
 

 The underlying dispute is the unsuccessful (to date) effort by one group of Anthony’s hems to collect the foregoing judgment owed to Anthony’s estate by Joe Scurria (the decedent’s brother) and Billy Hodge (the decedent’s nephew by marriage). The administratrix and those heirs aligned with her have asserted in this and other pending litigation that Joe Scurria and Billy Hodge fraudulently engaged in numerous financial maneuvers to put their assets beyond the reach of their creditors, thereby improperly avoiding payment of the judgment in favor of Anthony’s estate. Because the judgment debtors maintained possession of the properties transferred to various legal entities, the administratrix alleged that the transfers were presumed to be fraudulent simulations. Notwithstanding the 12foregoing, what we have before this court for review is the partial judgment of possession in favor of some of the heirs allied with the judgment debtors.
 

 For the following reasons, the judgment is reversed. The matter is remanded for further proceedings deemed necessary by the adversaries.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 At his 1983 death, Anthony had eight heirs including his brothers, sisters, and a niece, many of whom have since died, leav
 
 *622
 
 ing 19 surviving heirs whose names are underlined below:
 

 Sara Scurria Phillips, deceased
 
 Josephine Phillips Hodge
 
 (married to the judgment debtor, Billy Hodge, and mother of three Finlayson heirs of Jennie Scurria)
 

 Marie Phillips Michele
 

 Philip S. Scurria, deceased
 
 Dr. Sam Scurria
 

 Philip Scurria
 

 Tommy Scurria
 

 Jennie S. Scurria, no children, deceased Jennie’s heirs are the children of Joseph Scur-ria
 
 (Larry Scurria, Jennie Sue “GiGi” Ball, Maria
 
 O’Dowd) and Josephine Phillips Hodge
 
 (Sara Ann Finlayson, Charles Michael Finlayson, Billye Jo
 
 Finlayson)
 

 Annie Scurria Lombardo, deceased
 
 Andrew Lombardo
 

 Sammy Lombardo
 

 Sam Scurria, Jr., deceased
 
 Maria Wall O’Dowd
 

 Sam Scurria, HI
 

 Patrina Weems
 

 Vincent Scurria (predeceased Anthony)
 
 Dr. Sandra Scurria
 

 Joseph S. Scurria
 
 (judgment debtor) (three children who are heirs of Jennie)
 

 ] ¡Angelina Scurria llardo
 
 (administratrix) (sister of the decedent)
 

 Judge Caraway, writing the opinion in
 
 Scurria v. Hodge, supra,
 
 set out the background. In 1979, Anthony (whose succession is at issue), his brother, Joe Scurria, and a nephew by marriage, Billy Hodge, formed the Tallulah Cablevision Corporation (“TCC”). Each shareholder received 50 shares of stock. TCC borrowed $150,000 from a bank with each shareholder signing the loan and each shareholder advancing the corporation $70,000. Anthony was president and executed TCC promissory notes to each shareholder for the $70,000 loans. Anthony also made other loans to the corporation. At his death, the $70,000 loan was outstanding along with $27,500 in other loans.
 

 Following Anthony’s December 1988 death, two of decedent’s brothers, Joe and Sam, were named co-administrators of Anthony’s estate. Leroy Smith, Jr., was retained as attorney for the succession.
 

 Smith hired CPA Harry G. Frazer to value the assets for estate purposes. Frazer acknowledged he had no particular expertise at valuing cablevision systems but set the value of Anthony’s one-third interest in TCC at $195,050.
 

 The first documented TCC shareholders’ meeting was held on February 27, 1984, at which Billy Hodge and Joe Scurria were elected directors of TCC. Joe acted as administrator of Anthony’s succession at the meeting and voted the shares of the succession. In February 1984, the directors listed TCC for sale for $8,000,000 with a media brokerage firm. No sale was made and the brokerage contract was terminated.
 

 14Funds were needed to pay inheritance taxes. Each of the heirs would have
 
 *623
 
 owed $17,000 to $18,000 to liquidate the succession’s debts and pay the taxes. Joe Scurria and Billy Hodge offered to buy Anthony’s interest in TCC for $100,000. A petition for authority to sell was initially opposed by some heirs. Ultimately, the opposition was withdrawn and the court granted the authority to sell for $100,000 in September 1984. Joe Scurria and Billy Hodge bought the succession’s interest in TCC for $100,000 and had TCC repay $91,000 in debts owed to Anthony’s estate.
 

 Four months later in January 1985, Joe Scurria and Billy Hodge listed TCC for sale at $2.8 million and sold it for $1.9 million on May 30,1985. On May 29,1986, Philip Scurria sued Joe Scurria and Billy Hodge, alleging that as officers and majority shareholders of TCC, the pair violated their fiduciary duties and that Joe Scurria ■violated his fiduciary duties as co-administrator of Anthony’s estate. Later, Philip sued to have the succession reopened and was appointed provisional administrator. Philip, as provisional administrator of the succession, then brought an action against Joe Scurria, Billy Hodge, and TCC with the same allegations.
 

 Following completion of plaintiffs’ evidence at the 1997 trial, the trial court found the evidence did not prove intentional fraudulent misrepresentations by Joe Scurria and Billy Hodge and dismissed the claims of fraud. After the defense was heard, the trial court found that neither Joe Scurria nor Billy Hodge breached any fiduciary duties to Anthony’s succession.
 

 In
 
 Scurria, supra,
 
 this court reversed the trial court’s judgment. To overcome the appearance of self-dealing to the possible detriment of the succession, Joe Scur-ria and Billy Hodge had to prove that the transaction was an arms-length sale,
 
 ie.,
 
 that the purchase price paid by the fiduciary was the equivalent of the fair market value. Further, we held that a succession administrator is required to know the fair market value of a succession asset to be sold. Based upon the evidence adduced, this court found that the $100,000 purchase price the succession received from Joe Scurria and Billy Hodge was far below the fair market value. Additionally, this court determined that Joe Scurria and Billy Hodge breached their fiduciary duties to the succession.
 

 Finding the fair market value of TCC to have been $1.9 million, this court placed the net value of TCC at $1,550,000 (less debts and brokerage commission). Therefore, the court ordered Joe Scurria and Billy Hodge to pay to the succession $516,666.67 (less the $100,000 the two paid the succession in the contested sale) plus interest from the date of judicial demand. All of the succession’s subsequent efforts to collect that judgment have been unsuccessful.
 

 After the death of provisional administrator Philip Scurria on May 4, 2000, Angelina Scurria llardo, sister of Anthony, sought in July 2000 to be named adminis-tratrix of Anthony’s succession, noting that the only asset was the judgment owed the succession. On August 15, 2000, llardo was appointed administratrix.
 

 |fiIn 2007, Joseph Scurria filed a motion seeking to have the succession closed, since the matter had been pending for 24 years and since the succession had no debt and required no administration. Alternatively, Joseph Scurria requested llardo be removed as administratrix because she had filed no annual accounting, failed to fulfill her obligations to the succession timely, and mismanaged the estate by failing to close it and by permitting her animosity toward family members to interfere with her duties. The final allegation was that llardo was unfit to be administratrix due to bad moral character.
 

 
 *624
 
 On November 21, 2007, the trial judge denied the motion to close the succession and ordered llardo to file an Annual Accounting by January 20, 2008, and a Sworn Detailed Descriptive List by February 20, 2008.
 

 On December 23, 2008, 11 of Anthony’s heirs
 
 [3]
 
 filed a rule requesting llardo show cause why she should not be removed as administratrix. The allegations were that llardo never qualified as a permanent ad-ministratrix, never filed an accounting, never contacted a majority of the heirs to determine if they wanted to expend funds to litigate, and incurred numerous attorney’s fees and court costs on behalf of the succession without court approval or discussion with other family members. The group also alleged llardo was not competent and should be removed as administra-trix.
 

 On the same day, the same group of 11 heirs filed a rule seeking to be placed in possession of the succession. The 11 heirs relied upon La. C.C.P. parts. 3862 and 3371 to assert that other heirs concurred in being placed in possession, no longer wished llardo to act on their behalf, and sought her removal as administratrix.
 

 llardo objected to the proceedings because the moving parties did not comply with court rules. Additionally, the admin-istratrix sought a continuance of the hearing and sought to quash the subpoena served on her counsel. Her objection also alleged that Philip Scurria informed counsel for the administratrix that he did not engage Leroy Smith (movants’ attorney) to file pleadings for him. The trial judge reset until March 5, 2009, the hearing on the requests to remove the administratrix and to place some of the heirs in possession of the estate
 

 On February 11, 2009, llardo filed a motion seeking to have Leroy Smith, Jr., disqualified to represent anyone in this proceeding (the
 
 Succession of Anthony Scurria,
 
 # 2619),
 
 Ilardo v. Scurria
 
 (# 07-343), and
 
 Ilardo v. Scurria
 
 (#07-174). llardo alleged that Smith had a conflict of interest due to his prior representation of the Succession of Anthony Scurria and because he was a key fact witness.
 

 The following testimony was adduced at the March 5, 2010, hearing:
 

 Josephine Phillips Hodge
 

 • She was a niece of Anthony Scurria.
 

 • Her sister, Marie Phillips Michele, executed a power of attorney in her favor to handle the affairs of this succession, as did Dr. Sandra Scurria.
 

 • She wished to be placed in possession of the succession and did not want Angelina llardo to be the administra-trix.
 

 • Leroy Smith prepared all the powers of attorney she obtained.
 

 |s* She denied knowing that she could be personally liable or would have to post a bond as security for debts of the succession.
 

 • The children of Sam Scurria and Phillip Scurria plus Angelina llardo did not give her a power of attorney.
 

 • She had no knowledge of whether anyone had advised the six heirs of Jennie Scurria concerning the legal consequences of accepting possession of the succession of Anthony Scurria.
 

 Dr. Samuel Scurria
 

 • He did not want to be a part of the lawsuit and did hot want Angelina
 
 *625
 
 llardo to represent his interests in the succession.
 

 • He had people about whom he cared on both sides of the dispute and chose not to take either side.
 

 • Remaining neutral, he had signed nothing and attended no meetings.
 

 • His two brothers, Tommy and Philip, informed him that they wished to pursue collection of the debt owed the succession.
 

 • He placed his faith in the court, hoped the court would make the right decision and felt he would be pleased with it.
 

 • He joined neither side at the hearing.
 

 Charles Michael Finlayson
 

 • He was an heir of Jennie Scurria and executor of her estate.
 

 • He and his two sisters (Sara Ann Fin-layson and Billye Jo Finlayson) desired to be placed in possession of the Succession of Anthony Scurria.
 

 • He had not discussed any potential personal liability that might result from his being placed in possession of the estate of Anthony Scurria.
 

 • He did not want to sue his “own folks” and did not want to be involved.
 

 lflThe parties stipulated that the testimony of Sara Ann Finlayson and Billye Jo Finlayson would be the same as their brother.
 

 Attorney Tim O’Dowd sent to the court and to counsel a letter stating he represented and had the powers of attorney from Joe Scurria, judgment debtor, and his children Jennie Sue “GiGi” Ball, Maria Scurria O’Dowd (married to attorney O’Dowd) and Larry Scurria (heirs of Jennie Scurria along with the three Finlay-sons). The parties also stipulated that the testimony of Joe Scurria, Jennie Sue “GiGi” Ball, Maria Scurria O’Dowd, and Larry Scurria would be the same - as Charles Michael Finlayson.
 

 Placed into the record at the hearing were the two powers of attorney executed by Marie P. Michele and Dr. Sandra Scur-ria in favor of Josephine P. Hodge plus the Judgment of Possession in the Succession of Jennie S. Scurria naming her six heirs (listed above) to all her property not included in her particular legacies.
 

 The appellate record also contains trial court record # 07-343
 
 (Ilardo, Administratrix v. Joseph Samuel Scurria, et al.)
 
 in which the administratrix sought to compel production of financial information from the judgment debtor, Joe Scurria. The most recent minutes therein were dated January 7, 2009, prior to the trial court hearing in the present dispute.
 

 Also placed into this record is the trial court record # 07-174
 
 (Ilardo, Administratrix v. Charles H. (Billy) Hodge, et al.),
 
 the most recent minutes of which were also dated January 7, 2009. That action contains the succession’s efforts to obtain financial information concerning judgment 110debtor Billy Hodge and his alleged activities to avoid paying the judgment to the succession.
 

 Over objections by attorneys for the debtors and the heirs aligned with them, the trial court, although questioning their relevance, made a part of the record all the exhibits attached to various motions filed by the administratrix.
 

 The trial court ordered that 10 of the 11 petitioning heirs
 
 [4]
 
 (Dr. Sandra Scurria, Joe Scurria, Josephine Hodge, Marie P. Michele, Larry Scurria, Jennie Sue “GiGi” Ball, Maria O’Dowd, Sara Ann Finlayson,
 
 *626
 
 Charles Michael Finlayson, Billye Jo Fin-layson) be placed into possession of their undivided interests in the only remaining asset of Anthony’s estate, which is the unpaid judgment against Billy Hodge and Joe Scurria.
 

 The trial court deferred a decision on Ilardo’s motion to disqualify Leroy Smith from representing the heirs aligned with the debtors. The administratrix sought supervisory review of the trial court’s rulings.
 

 In Writs No. 44,786-CW consolidated with Nos. 44,787-CW and 44,788-CW, this court on June 18, 2009, determined that supervisory jurisdiction was not warranted on the trial court ruling which deferred a decision of the motion to disqualify Smith. As to the partial judgment of possession, the court concluded that it was properly reviewable by appeal and remanded the matter for perfection of the appeal which is now before this court for decision.
 

 liiOn April 15, 2010, however, this appellate panel directed the trial court to rule on the administratrix’s February 11, 2009, motion to disqualify Leroy Smith. On April 23, 2010, the appellate panel stayed the appeal and directed the trial court to resolve that issue expeditiously.
 

 On May 14, 2010, the trial judge signed an order finding that the motion to disqualify had “merit in that conflicts of interest may be caused by Mr. Smith’s former role as Attorney for the Succession and by his potential role as a witness in the proceeding and therefore Mr. Smith’s decision to withdraw was both appropriate and required by this ruling.” On the same date, the trial court signed the order granting Leroy Smith’s motion to withdraw and enrolling James E. Paxton and Lauri G. Boyd as counsel for defendants. On June 28, 2010, the appellate panel signed an order lifting the previously granted stay.
 

 The judgment debtors and their allies made arguments in brief on appeal about events which occurred after the trial court action,
 
 i.e.,
 
 Billy Hodge’s purchase of another heir’s interest in Anthony’s succession. In a supplemental brief filed in this court, the administratrix objected to any consideration of such subsequent actions outside the appellate record. Alternatively, she requested that if this court chose to consider events taking place outside' the record, we should also consider the succession’s purchase of another heir’s interest in Anthony’s succession.
 
 [5]
 
 For the following reasons, we will not consider those events.
 

 In
 
 Martin v. Comm-Care Corp.,
 
 37,-600 (La.App.2d Cir.10/16/03), 859 So.2d 217,
 
 writ denied,
 
 2003-3188 (La.2/6/04), 866 So.2d 225, this court explained that it is well settled that an appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. The record on appeal includes the pleadings, court minutes, transcript, judgments and other rulings, unless otherwise designated. La. C.C.P. art. 2128. An appellate court must render its judgment upon the record on appeal. La. C.C.P. art. 2164. Memoranda and exhibits which were not filed into evidence in the trial court are not part of the record on appeal. If a party’s appellate brief asserts facts which are not in the record and refers to exhibits which have not been filed into evidence in the trial record, an appellate
 
 *627
 
 court may not consider those memoranda and exhibits, since they are outside the record. Appellate briefs are not part of the record on appeal. This court has no authority to consider facts referred to in appellate briefs, or in exhibits, if those facts are not in the record on appeal.
 
 [6]
 
 See also,
 
 Reed v. Peoples State Bank of Many,
 
 36,531 (La.App.2d Cir.3/5/03), 839 So.2d 955. Therefore, this court’s review of this dispute is limited to a consideration of the status of the parties when the trial court rendered the partial judgment of possession.
 

 | iaTHE LAW
 

 La. C.C.P. art. 3362 titled “Prior to Ho-mologation of Final Tableau of Distribution” states:
 

 At any time prior to the homologation of the final tableau of distribution, a majority of the heirs of an intestate decedent whose succession is under administration may be sent into possession of all or part of the property of the succession upon their filing a petition for possession as provided in Articles 3001 through 3008 excluding any provisions of Article 3004 to the contrary, except that the proceeding shall be contradictory with the administrator. Upon the filing of such a petition the court shall order the administrator to show cause why the petitioners should not be sent into possession, and shall order that the petitioners be sent into possession unless the administrator or any heir shows that irreparable injury would result, and upon a showing that adequate assets will be retained in the succession to pay all claims, charges, debts, and obligations of the succession. If a majority of the heirs are sent into possession of a part of the property, the administrator shall continue to administer the remainder.
 

 The comments to the article state, in part:
 

 (a) This article applies only when the petition for possession is filed prior to the homologation of the final tableau of distribution. It complements Art. 3361,
 
 supra.
 

 (b) Since acceptance under this article takes place before the completion of the administration, it is an unconditional acceptance, and the rules of Arts. 3001-3008, supra, governing acceptance without administration are, therefore, applicable. However, since an administrator has been appointed to represent creditors, the heirs are not sent into possession ex parte but only in proceeding contradictory with the administrator, who may show to the satisfaction of the court that the heirs should not be sent into possession or that they should be compelled to furnish security. Art. 1193 of the Civil Code and the jurisprudence indicate that a contradictory proceeding is required.
 
 Calhoun v. McKnight,
 
 39 La.Ann. 325,1 So. 612 (1887).
 

 (c) The provision permitting the heirs to go into possession of a part of the property, with the succession representative continuing to administer the balance, is new in Louisiana. | u Under the substantive articles of the Civil Code an heir
 
 *628
 
 who takes possession of a part of the property of a succession before the administration is complete becomes personally liable for the debts. Therefore, the succession creditors could still hold the heirs liable and would not be affected. The above article does not change this fundamental rule.
 

 (d) All competent heirs must join in the acceptance. See Art. 3004,
 
 supra.
 

 DISCUSSION
 

 The first requirement for a majority of heirs to obtain partial possession of a succession is that the matter be tried contradictorily with the administrator. In this case, the administratrix did not show up for the hearing nor did she provide documentation that would have assisted in resolving the dispute. Her position was argued by her attorney, which satisfied the directive that a contradictory hearing be held.
 

 llardo, the administratrix, bases her appeal upon the trial court’s erroneous granting of the partial judgment of possession in favor of the judgment debtors and the heirs aligned with them.
 

 1. Nonpayment of Federal Estate and Louisiana Inheritance Taxes
 

 According to the administratrix, the sole asset of the estate, the uncollected judgment (which she argues now totals almost $1 million with accrued interest) must be reported to the state for inheritance tax purposes.
 
 [7]
 
 However, the record contains no declaration, testimony, or documentation 11fias to the present amount due on the judgment rendered by this court in 1997 against Joe Scurria and Billy Hodge.
 

 In
 
 Succession of Davis,
 
 43,096 (La.App.2d Cir.3/19/08), 978 So.2d 606, this court found a judgment of possession in an ancillary succession proceeding was premature because the appropriate account-ings and final payment of federal estate taxes known to be owed had not been filed or paid. In
 
 Davis, supra,
 
 no Louisiana inheritance taxes were due and federal estate taxes had been partially paid with the final accounting and payment pending. The present dispute is factually distinguishable because, unlike
 
 Davis,
 
 it is not possible to determine if or whether any taxes could be due sometime in the future.
 

 Whether any federal estate taxes or Louisiana inheritance taxes may or may not be due on this unpaid judgment depends on the whether the administratrix and her allies are successful in collecting any or all of the judgment. Unless and until Joe Scurria and Billy Hodge pay the judgment in whole or in part to the succession, there is nothing in the estate to report or on which to pay any inheritance or estate taxes which may or may not be due at some time in the future. On this record, we cannot determine if taxes are ever to be due, much less how much and whether sufficient assets exist to pay the obligation.
 

 2. Unpaid Debts of the Succession (Attorney’s Fees, Administratrix’s Fees and Costs, Costs of Court, Expenses, etc.)
 

 Neither set of litigants placed into evidence any information about amounts of
 
 *629
 
 these charges. After the conclusion of the hearing and during argument of counsel, the attorney for the administratrix attempted to place 11fiinto evidence a record of accrued costs and expenses. The trial court declined to admit this and the accounting was proffered. However, the trial court acknowledged that significant costs and expenses would have accrued in this longstanding litigation. No succession accounting was placed into the record, making it difficult to determine whether potential assets are sufficient to cover unknown expenses and costs. The trial court observed that the judgment sought to be collected was substantial and stated in oral reasons:
 

 Obviously, costs are incurred when you have a lawsuit, particularly one like this. It doesn’t surprise me that the costs are substantial. Of course, the key issue is whether there’s sufficient assets retained in the succession to pay all the claims, charges, debts and obligations of the succession. If the value of that claim was not enough to cover the costs, it’s safe to say we wouldn’t be here today. That’s why we are here. And it is a substantial judgment and it’s a substantial claim. And the value of that claim I don’t think is fixed, but the Court has no doubt that it’s greater than the amount of possible court cost debt.
 

 The judgment debtors and/or those hems siding with them made contradictory arguments about the existence of debts of the succession. In 2007 Joe Scurria alleged that the succession’s lack of debt justified closing the succession. In conflicting allegations seeking to remove llar-do as administratrix, Scurria and his allies asserted that she had incurred without authority court costs and other fees on behalf of the succession.
 

 The trial court correctly observed that the value of any claim against the succession was not fixed. While accepting the substance of trial court’s foregoing statement, we find neither the administratrix nor those seeking the partial judgment of possession complied with La. C.C.P. art. 3362. Neither 117made a showing that adequate assets would be retained in the succession to pay any charges or obligations which likewise were not established.
 

 Based on our observations about the possible future tax liability and the lack of evidence on value of potential assets and amounts of succession obligations, we conclude that the judgment of partial possession must be reversed and the matter remanded for further proceedings in the trial court.
 

 3. Additional Issues, Not Necessary to Resolve this Dispute.
 

 (a) Although not necessary to resolve this appeal, we observe that the trial court correctly determined that a judgment of partial possession would not have irreparably harmed the succession. In the context of injunctions, irreparable injury is defined as that which cannot be adequately compensated in money damages or measured by a pecuniary standard.
 
 See East Baton Rouge Parish School Bd. v. Wilson,
 
 2008-0536, 15 (La.App. 1st Cir.6/6/08), 992 So.2d 537, 546,
 
 writ denied,
 
 2008-1479 (La.12/12/08), 997 So.2d 560. This dispute is all about money with some wanting to collect it and other heirs apparently wishing to forgive the money judgment owed to the estate.
 

 Because La. C.C.P. art. 3362 specifically provides that the administrator continues to administer the remainder if a majority of heirs are placed in partial possession, we observe that the administratrix’s assertions of potential irreparable injury do not convince. The trial court reasonably concluded that there was no showing of irreparable injury.
 

 
 *630
 
 (b) Also at issue was a dispute as to whether “a majority of heirs,” as used in art. 3362, refers to percentage of ownership interest in the estate:
 

 | is* counting by roots, in this case eight original heirs, or
 

 • counting by heads of individual heirs, 19 of whom existed at the time of the hearing and judgment of partial possession.
 

 In oral reasons for its decision, the trial court explained that under the rules of statutory interpretation, if a literal interpretation does not lead to absurd results, it should be followed. In this case, “majority” means more than half. The trial court specifically found that movants established that more than half the heirs sought to be placed into possession of their portion of the estate. The administratrix made reasonable arguments that the court should interpret “majority of heirs” as a majority of ownership interest in the succession. However, the legislature could easily have required a majority of the ownership interest in the succession for a partial judgment of possession instead of “a majority of the heirs of an intestate decedent.” La. C.C.P. art. 3362. The legislature is where that issue should be addressed.
 

 (c) The administratrix objects that the interests of justice were not served, since some heirs requested the partial judgment of possession without being adequately advised of the legal ramifications of their actions.
 

 The administratrix objects on appeal that the heirs who sought the partial judgment of possession did not receive independent legal advice, since they relied on Leroy Smith, who represented the judgment debtors and had a conflict of interest from previously representing the succession. Additionally, the administratrix correctly observed that the testimony demonstrated that those heirs who aligned with the judgment debtors did not understand the legal consequences of obtaining the partial judgment of possession.
 

 119Pointing to La. C.C.P. art. 3001,
 
 et seq.,
 
 the trial court correctly noted any creditor having a claim against a succession could file a contradictory motion against the parties placed into possession to compel them to furnish security. Moreover, heirs placed in partial possession accept possession unconditionally and become personally hable for debts of the succession. The record clearly revealed that those heirs were not aware of those legal consequences. But the administra-trix’s complaints on behalf of those heirs were not hers to make. If those parties siding with the judgment debtors are aggrieved in the future, they may make complaints for themselves.
 

 CONCLUSION
 

 Based upon the finding that the showings required by La. C.C.P. art. 3362 were not made, we reverse the partial judgment of possession and remand this matter for further proceedings. This court was provided with neither evidence concerning potential tax liability nor documentation of the amount of the potential assets or liabilities of the succession. The interest of judicial efficiency will be served if the parties resolve this dispute completely in the trial court with sufficient evidence for an adequate review should a further appeal arise. The sparse evidence in this record did not support the relief sought. After a substantial expenditure of trial and appellate court time, the parties are in the same posture they occupied prior to this phase of this unfortunate litigation.
 

 DECREE
 

 The judgment is reversed and remanded for further proceedings deemed necessary
 
 *631
 
 by the parties. All costs of court generated at the trial andj^appellate level by the December 23, 2008, and subsequent motions and pleadings are cast against the movers/appellees (judgment debtors and the heirs placed into partial possession in the judgment reversed herein).
 

 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 

 [1]
 

 . Although the issues are not the same, one cannot help but think of
 
 Jarndyce v. Jarndyce,
 
 the endless (until the money ran out) litigation over a contested estate in
 
 Bleak House
 
 by Charles Dickens.
 

 [2]
 

 . $516,666.67 less the $100,000 received by the succession in the sale to Joe Scurria and Billy Hodge.
 

 [3]
 

 . Dr. Sandra Scurria, Joe Scurria, Josephine Hodge, Marie P. Michele, Larry Scurria, Philip Scurria, Jennie Sue "GiGi” Ball, Maria O'Dowd, Sara Ann Finlayson, Charles Michael Finlayson, Billye Jo Finlayson.
 

 [4]
 

 . Of the initial 11 petitioners, Philip Scurria was omitted, since he had communicated he had not authorized Leroy Smith to make a filing on his behalf.
 

 [5]
 

 . This court granted the administratrix's motion to have Joseph Samuel Scurria removed as a party to these proceedings, since the succession purchased his interest in Anthony’s succession. As that action occurred after rendition of the trial court judgment, this court does not consider it or anything else outside the appellate record, for reasons stated above.
 

 [6]
 

 . As noted previously, the items introduced into this record are the powers of attorney from Michele and Dr. Sandra Scurria in favor of Mrs. Hodge, the Judgment of Possession in the Succession of Jennie Scurria, the records in trial court record # 07-343
 
 (Ilardo, Administratrix v. Joseph Samuel Scurria, et al.)
 
 and the trial court record # 07-174
 
 (Ilardo, Administratrix v. Joseph Samuel Scurria, et al.),
 
 the most recent minutes in both of which were dated January 7, 2009, prior to the trial court action in this matter in March 2009. The administratrix also introduced into evidence all attachments to her motions filed in the trial court.
 

 [7]
 

 . Section 1 of Act 822 of the 2008 Regular Session of the Louisiana Legislature repealed La. R.S. 47:2401 through 2426. Section 1 was effective 1/1/08. Section 2 provided that inheritance taxes prescribed in three years from the 31st day of December of the year in which such taxes become due. Inheritance taxes due to the state for deaths occurring before July 1, 2004, for which no inheritance tax return has been filed before January 1, 2008, shall be deemed due on January 1, 2008. Section 2 was effective on 1/1/08. It appears that any taxes which might possibly be due the state will prescribe on December 31, 2011.